WALSH-ANDERSON COMPANY, a Corporation, Plaintiff and Respondent, v. ROBERT L. KELLER and PEGGY J. KELLER, MODERN EQUIPMENT COMPANY, AMERICAN APPLIANCE COMPANY, and ALLIED STORES CORPORATION, Defendants, and WALTER E. TYNES COMPANY, INC., and HARRIET A. STORM, Defendants and Appellants.

No. 10192.
Submitted March 7, 1961. Decided June 1, 1961.
362 P.2d 533.

Hall, Alexander & Kuenning, John H. Kuenning, S. M. Swanberg, Great Falls, John H. Kuenning and S. M. Swanberg, argued orally for appellants.

Graybill, Bradford & Graybill, Truman G. Bradford, Great Falls, Truman G. Bradford argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for the plaintiff rendered by the district court of the eighth judicial district sitting without a jury. This case is a consolidated lien foreclosure action brought by the plaintiff, Walsh Anderson Co., to foreclose mechanics' liens on two separate parcels of real property owned by the defendants, Robert L. Keller and his wife Peggy Keller. Certain other parties who held liens on these same parcels of property were joined as defendants. The plaintiff obtained judgment by default against the Kellers and they are not parties to this appeal.

This appeal has been brought by the defendant, Harriet Storm, hereinafter referred to as Storm, who has valid mortgage liens on both parcels of property and by the defendant, Walter E. Tynes Co., Inc., hereinafter referred to as Tynes which attached both parcels of property in an action against the Kellers in which it later obtained judgment. Both the defendants Storm and Tynes cross-complained for foreclosure of their separate liens on the property involved. The legal

descriptions and street addresses of the parcels of property are not important to a consideration of the issues of this case and they will be referred to as property "A" and property "B" respectively.

The district court judgment resulted in the following priority of liens on these parcels of property: On property "A" the plaintiff had first priority for the amount of $8,264.20 and the defendant Storm had second priority for the amount of $16,749.57. On property "B" the plaintiff had first priority for the amount of $6,993.88 and the defendant Storm had second priority for the amount of $17,250.79. The defendant Tynes was allowed third priority on each of the parcels of property for the amount of $9,312.48. The proceeds from the sheriff's sale resulted in only enough to satisfy the plaintiff's liens in full and part of the defendant Storm's liens. The defendants Storm and Tynes have appealed from the judgment.

Keller was a contractor who was in the business of building the homes involved in the instant case on a speculative basis. He had no buyers at the time he started construction, and was unable to sell the homes and pay his various creditors.

The liens of the various parties arose in the following manner. Keller bought the lots on which the homes were to be constructed and entered into an agreement with the plaintiff whereby the plaintiff furnished materials on an open account as they were needed for the construction involved until the homes were sold. This agreement was not in writing. The plaintiff furnished such building materials on an open account beginning June 25, 1957, for property "A" and August 5, 1957, for property "B". The last items in each of the accounts were furnished on July 29, 1958, and the plaintiff filed mechanics' liens with the county clerk on each of the parcels of property on September 12, 1958.

The defendant Storm held mortgages on each of the parcels of property which mortgages had been devised to her by her deceased husband. The mortgage on property "A" was re-

corded on August 5, 1957, and that on property "B" was recorded on September 25, 1957.

It was stipulated by all the parties to the action that the defendant Tynes had attached the parcels of property on September 9, 1958, in a suit in which it later obtained judgment. The other facts involved will be discussed as they become pertinent to the issues in the case.

The specifications of error of the defendants Storm and Tynes raise three questions for our consideration.

The first question is whether the plaintiff's mechanics' liens are valid. This involves sections 45-501 and 45-502, R.C.M. 1947. Sections 45-501 provides for a lien to a lumberman on any building for which he has furnished materials upon complying with the provisions of the chapter. Section 45-502 provides:

"Every person wishing to avail himself of the benefits of this chapter must file with the county clerk of the county in which the property or premises mentioned in the preceding section is situated, and within ninety days after the material or machinery aforesaid has been furnished, or the work or labor performed, a just and true account of the amount due him, after allowing all credits, and containing a correct description of the property to be charged with such lien, verified by affidavit, but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description; which paper containing the account, description, and affidavit is deemed the lien, *and when there is an open account between the parties for labor, material, or machinery, such lien may be filed within ninety days after the date of the last item in such account, and include all items and charges contained therein, for material or machinery furnished for, or work performed on, the property on which the lien is claimed.*" (Emphasis supplied.)

The defendants Storm and Tynes contest the last items listed in each of the alleged open accounts as items that will not

continue the time for filing the liens. The last items in each of the accounts were two 4 x 8 one-quarter inch plywood sheets, each costing $3.68, and each having been delivered on July 29, 1958. These are the only items which were delivered within ninety days of the time the liens were filed and must therefore be included in the open accounts for the plaintiff's liens to be valid.

These plywood sheets were built into planters which were placed between the living room and the kitchen in each of the homes. The planters were not included in the plans and specifications but were apparently built because of suggestions to Keller that they would enhance the salability of the homes. *The district court found, as fact, that the planters were put into the homes in good faith to enhance their salability with no intent to defraud the defendants Storm and Tynes or to extend the time for filing the plaintiff's mechanics' liens.* This finding was supported by substantial evidence in the record in the form of testimony by Keller and the president of the plaintiff corporation.

The defendants Storm and Tynes contend that the delivery of the plywood sheets was not sufficient to extend the time for filing the plaintiff's liens since they were items which were not included in the original contract for furnishing materials as contemplated by the plaintiff and Keller and they were sold and delivered after the homes were substantially completed.

As we have previously noted section 45-502 provides in part that when there is an open account for the furnishing of materials and a lien is filed within ninety days of the last item of such account, the lien will include all charges for materials furnished for the construction of the property on which the lien is claimed. There is nothing in this statute referring to a substantial completion test but only a reference to an open account. Whether there was such an open account as to in-

clude the two plywood sheets depends on the agreement between plaintiff and Keller.

The president of the plaintiff corporation testified that the oral agreement with Keller was that the plaintiff would furnish the materials as long as they were ordered and ''would carry the house until it was sold.'' This witness also testified that it made no difference if Keller changed the plans as he went along and if such changes were made the items would still be furnished as needed. All of the testimony reflected the idea that the agreement was to furnish all the items that went into the homes and not just items included in the plans and specifications.

When cross-examined directly on the point, both the president of the plaintiff corporation and Keller testified that there was no agreement between them whereby Keller would order an item just for the purposes of extending the time within which a lien could be filed. Keller testified that these planters had been recommended to him by prospective buyers and real estate agents to make the homes more salable. There was no evidence indicating any bad faith in having such planters built and installed in the homes. An absence of bad faith is also shown by the fact that the plaintiff still had substantial time within which he could have filed liens on the property when the last deliveries were made on July 29, 1958. The testimony is also uncontradicted that the plywood sheets were furnished at the instance and request of Keller and not by the plaintiff on his own volition.

The defendants Storm and Tynes have cited many cases from other jurisdictions in support of their argument. These cases are distinguishable from the instant case in many respects. In most of these cases the other states did not have statutory provisions containing language concerning an open account as provided by section 45-502, supra. In many of the cases contractors were attempting to extend their mechanics' liens by installing small items on their own volition which was

not done in the instant case. Other cases involved specific written agreements concerning what was to be supplied and an attempt to go outside of these agreements by supplying trivial items with the intent to extend the time within which to file the liens. The agreement in the instant case contemplated furnishing items outside the specific plans and specifications. Many of the cases involved the rights of innocent grantees and innocent third parties. Here the defendant Storm's deceased husband recorded his mortgages on the parcels of property after construction had been started and before it had been completed. An encumbrance on property which is created during the progress of construction is obtained with notice that a mechanic's lien might be filed. Sawyer v. Sawyer, 79 Wyo. 489, 335 P.2d 794; also see Soliri v. Fasso, 56 Mont. 400, 185 P. 322; and Continental Supply Co. v. White, 92 Mont. 254, 12 P.2d 569. The defendant Tynes was also not an innocent grantee of the property but had attached the property prior to obtaining a judgment against Keller.

In the Minnesota case of W. B. Martin Lumber Co. v. Noss, 256 Minn. 471, 474, 99 N.W.2d 65, 68, it was held that the delivery of two pairs of shutters, which were not included in the plans and specifications, was sufficient to extend the time for filing a materialman's mechanic's lien. The court reasoned as follows:

"'* * * here the record shows that other material had been delivered which was not in the specifications, indicating at least an implied agreement to furnish materials outside of the specifications. As a result the lumber company would not have cause to be suspicious when the shutters were ordered.''

The same reasoning is applicable to the instant case where there was substantial evidence that the plaintiff had agreed to supply items to Keller as they were needed in the construction of the building and was not bound by the plans and specifications. The plaintiff would have no cause to be suspicious at the order for the plywood sheets which were built into planters.

The defendants contend that a materialman cannot extend the time for filing a lien by delivering insignificant items after the contract is substantially completed. The Noss case, supra, 256 Minn. at page 475, 99 N.W.2d at page 68, answered such a contention by the following language:

"* * * The assertion is correct if * * * the *sole* purpose and motive of delivering insignificant items is to continue or revive the lien. However, that does not appear to have been the situation here inasmuch as the lumber company had a right to rely on Kressin's representation that the shutters were needed. The fact that the shutters were insignificant in relation to the value of the total material delivered is not conclusive with regard to extending the time for filing the lien."

In the instant case the district court found that the purpose of furnishing the plywood sheets was to enhance the salability of the homes and not to extend the time for filing liens. This finding was supported by substantial evidence and therefore this court is bound by it.

This court has recognized that the question of whether items are furnished under a continuous "open account" is one of fact. Bartholomew v. James, 76 Mont. 359, 246 P. 771; Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 111 P.2d 267. The district court impliedly found by its judgment that there was one continuous "open account" and since there is substantial evidence to support such a finding we will not disturb it on appeal.

We realize that we are dealing with a gray area of the mechanic's lien law in the instant case. However, under the specific facts and circumstances involved here, the delivery of the plywood sheets, which were charged out on July 29, 1958, extended the time within which the plaintiff could file its mechanics' liens. In so concluding, we have considered the type of agreement between the plaintiff and Keller, the absence of bad faith in delivering the plywood sheets, and the

fact that the defendants Storm and Tynes are not innocent grantees. Further cases in this area must be decided on their own specific facts.

The second question is whether the district court erred in failing to admit into evidence a deposition of Keller which was taken before the trial.

Prior to examination of Keller, as an adverse witness, the defendant Storm attempted to admit into evidence Keller's prior deposition. An objection to the admission of the deposition was made and sustained on the grounds that Keller was present in court and had been subpoenaed as a witness by the defendant Storm. Keller was then called as an adverse witness by the defendant Storm and testified.

The defendant Storm contends that since the deposition of Keller was taken because he was a party to the action it should have been admitted into evidence under the provisions of sections 93-1801-3, and 93-1801-10, R.C.M.1947, even though he was available to testify at the trial.

Section 93-1801-3 provides for the taking of depositions of witnesses, as follows:

"The testimony of a witness in this state may be taken by deposition in an action at any time after the service of the summons or appearance of the defendant, and in a special proceeding after a question of fact has arisen therein, in the following cases:

"1. When the witness is a party to the action or proceeding, or an officer or member of a corporation which is a party to the action or proceeding, or a person for whose immediate benefit the action or proceeding is prosecuted or defended.

"2. When the witness resides out of the county in which his testimony is to be used.

"3. When the witness is about to leave the county where the action is to be tried, and will probably continue absent when the testimony is required.

"4. When the witness, otherwise liable to attend the trial, is nevertheless too infirm to attend.

"5. When the testimony is required upon a motion, or in any other case where the oral examination of the witness is not required.

"6. When the witness is the only one who can establish facts or a fact material to the issue; provided, that the deposition of such witness shall not be used if his presence can be procured at the time of the trial of the cause."

Section 93-1801-10 provides in part:

"* * * If the deposition be taken under subdivisions 2, 3, and 4, of section 93-1801-3, proof must be made at the trial that the witness continues absent or infirm, or is dead."

Under similar statutes the California courts have consistently held that the deposition of a party is admissible whether he is present to testify or not. See Newell v. Desmond, 74 Cal. 46, 15 P. 369; Unruh v. Nelson, 212 Cal. 130, 297 P. 888; Sannes v. McEwan, 122 Cal.App. 265, 10 P.2d 81; Hurtel v. Albert Cohn, Inc., 5 Cal.2d 145, 52 P.2d 922. However, these California cases all involve situations where the deposition was that of a contending party to the action. In the instant case Keller's default had been entered at the time of trial, although he was a party of record.

The California cases also were concerned with situations where the deposition was very prejudicial to the interests of the party against whom it was attempted to be admitted into evidence, and the matters contained therein had not been covered during the oral examination of the deponent at the trial. In Wulferdinger v. Pickwick Stages System, 105 Cal.App. 509, 288 P. 93, 94, the California Court recognized that if refusal of admission into evidence of a party's deposition is to be reversible error, the deposition must contain matter not covered in the oral examination of the deponent. In that case the court stated:

"* * * The deposition of the witness having been taken

under subdivision 1 of section 2021 of the Code of Civil Procedure [similar to R.C.M.1947, § 93-1801-3, subd. 1] as a party to the action, the defendant would have been entitled to read it in evidence, notwithstanding her personal appearance at the trial, *provided it contained anything material to the issues which were not covered by her oral examination at the trial.*" (Emphasis supplied.)

 We have thoroughly examined the deposition of Keller, which was refused admission into evidence, and also his testimony from the record of the trial proceedings. His testimony at the trial does not materially deviate from that contained in the deposition nor can we find material matters which have been covered by the deposition and omitted in his testimony at the trial. Under these circumstances the district court did not err in refusing to admit Keller's deposition into evidence.

The third question is whether the district court erred in not allowing a 15 percent discount from the total amount of the plaintiff's lien because of a discount agreement between the plaintiff and Keller.

The defendant Storm contends that 15 percent should be deducted from the plaintiff's total lien since there was an agreement between the plaintiff and Keller that Keller would receive a 15 percent builder's volume discount on items furnished by the plaintiff.

The president of the plaintiff corporation and Keller both testified that the plaintiff had agreed to give Keller a 15 percent discount on all materials which were furnished that were not marked as "net" items. In this respect the testimony of the president of the plaintiff corporation on cross-examination was:

"Q. What was the purpose for which this 15 percent discount was allowed? A. It was intended as a builders' Volume discount, and for more or less prompt payments."
On redirect examination he testified:

"Q. You testified that you gave this 15 percent discount for prompt payment, is that correct? A. Yes.

"Q. - And what would you consider a prompt payment? A. Within the 90-day period of the last charge.

"Q. Did you intend to give Mr. Keller a 15 percent discount if he did not pay his bill until two or three years later. A. I don't feel we are obligated to give him the discount after having carried the account for two years or longer. It is almost two years."

From this testimony the district court could find that the 15 percent discount was to be allowed for volume *and* prompt payment. Since payment was not made promptly the plaintiff is entitled to a lien for the full value of the materials which were furnished on the two homes.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR and JOHN C. HARRISON concur.