FRANK J. TRUNK & SON, INC., Plaintiff and Appellant, *v.* HENRY DEHAAN, JR., and MAE DEHAAN, Husband and Wife, FRANK DEHAAN and VERA MAE DEHAAN, Husband and Wife, and JOE STRANSKY, Defendants and Respondents.

No. 10663
Submitted March 2, 1964. Decided April 6, 1964.
Rehearing denied April 28, 1964.
391 P.2d 353.

James H. Morrow, Jr., Donald Nash, (argued), Bozeman, for appellants.

Landoe & Gary, Gene Brown, (argued), Bozeman, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by Frank J. Trunk & Son., Inc., hereinafter referred to as plaintiff from a judgment of the District Court of Gallatin County, Montana, wherein the plaintiff filed an action to foreclose a mechanic's lien. The lower court found for the defendants DeHaan for the reason that the lien was not filed within the statutory period of ninety days.

The facts giving rise to this appeal are as follows: In April of 1960, the defendants DeHaan contracted with the defendant Joe Stransky, a contractor, for certain labor and materials in the construction of a house. The contract specifically excluded the furnishing and installation of a toilet stool and hot water heater. Stransky sub-contracted the heating and plumbing work to be done by him, to the plaintiff. About May 25, 1960, the plaintiff commenced the plumbing work on the house. On September 15, 1960, the plaintiff finished all of the plumbing

work called for in the contract between the DeHaans and Stransky. However on September 29, 1960, one of the DeHaans called up the plaintiff and requested help in installing the toilet stool and water heater, so, on September 30, the plaintiff assisted Frank DeHaan in the installation of these items.

The DeHaans paid Stransky the agreed amount for the construction of the house, including the plumbing work. An officer of the plaintiff corporation testified that it did not receive any money from Stransky for the work done on the DeHaan house. Plaintiff's testimony did however show that on September 14, 1960, certain credits were applied by the plaintiff to Stransky's account for several jobs which the plaintiff had already completed.

On December 27, 1960, the plaintiff filed a lien against the property in question for the sum of $2,322.43, the value of the labor and materials furnished.

The appellant's brief contains four specifications of error, most of which go to the findings of fact and conclusions of law made by the lower court. These specifications can be stated in three questions: (1) Did the court err in finding that the lien filed by the plaintiff was not filed within the statutory period; (2) Were the credits owed by the defendant Stransky to the plaintiff properly allocated; and (3) Even though the lien be insufficient, should not the lower court have entered a judgment against the defendants Stransky and DeHaan?

The appellant states that the most important question before this court is whether or not the lien for labor and materials on the house was perfected within ninety days after the materials were furnished or labor performed. The answer to this question depends upon the date when the statutory period started to run, that is, whether it started running on September 15, when the plaintiff allegedly did the last work under the prime contract or on September 30, when the plaintiff did some work at the request of the DeHaans.

Section 45-502, R.C.M.1947, provides that:

"Every person wishing to avail himself of the benefits of this chapter must file with the county clerk of the county in which the property or premises mentioned in the preceding section is situated, and within ninety days after the material or machinery aforesaid has been furnished, or the work or labor performed, a just and true account of the amount due him, after allowing all credits, and containing a correct description of the property to be charged with such lien, verified by affidavit, but any error or mistake in the amount or description does not affect the validity of the lien, if the property can be identified by the description; which paper containing the account, description, and affidavit is deemed the lien, and when there is an open account between the parties for labor, material, or machinery, such lien may be filed within ninety days after the date of the last item in such account, and include all items and charges contained therein, for material or machinery furnished for, or work performed on, the property on which the lien is claimed."

The time period mentioned in this section runs as to each contract from the date when "the material or machinery aforesaid has been furnished, or the work or labor performed." In the case of Helena Steam Heating & Supply Co. v. Wells, 16 Mont. 65, 40 P. 78, this court said:

"We are aware that the authorities hold that, where materials are delivered under separate and distinct contracts, the lien should be filed within the time prescribed by the statute after the delivery under each of such contracts."

So the question of whether the work of September 30 was done pursuant to the original contract or pursuant to a contract between the plaintiff and the DeHaans is vital to the validity of the lien. The court below found in its findings of fact that there were two separate contracts entered into, one between the contractor Stransky and the DeHaans and one between the plaintiff and DeHaans. This question of whether the work was finished under one contract or separate contracts

446

is a question of fact to be decided by the trier of fact, in this case, the trial court. Bartholomew v. James, 76 Mont. 359, 246 P. 771; Walsh-Anderson Co. v. Keller, 139 Mont. 210, 362 P.2d 533. The findings of the trial court in this matter will not be disturbed on appeal where there is substantial evidence to support them. Walsh-Anderson Co. v. Keller, supra; Hammond v. Knievel, 141 Mont. 433, 378 P.2d 388. We have reviewed the evidence in this case and find that it is more than substantial. The problem of tacking the time period of a subsequent contract entered into between the subcontractor and the owner to the time period of the original prime contract has arisen in other states. The answer has been almost universal in denying the subcontractor the right to do this. See Annotation in 78 A.L.R.2d 1161.

The second question, involving the allocation of credits has become moot due to the affirmance of the lower court's holding that the lien is invalid. The lower court found as a matter of fact that the DeHaans had paid the contractor Stransky the agreed purchase price for the house, which finding was supported by substantial evidence. The matter of allocation of credits between the plaintiff and the contractor is of no moment now, because the plaintiff does not have a cause of action under the alleged lien against the owners of the house. The plaintiff's cause of action, that is, to foreclose the lien, existed solely by virtue of the statute, there being no privity of contract between him and the DeHaans on which to predicate an action. The right to sue the DeHaans was lost by the failure to comply with the statutes creating it. True, there might have existed a cause of action for labor performed and materials furnished on September 30 by the plaintiff, however, that question was not litigated nor was any proof offered on it.

The third question concerning the failure of the lower court to enter personal judgments against the defendants DeHaan and defendant Stransky must be divided in two. Appellant asserts that the lower court should have entered personal judg-

ments against both defendants notwithstanding the invalidity of the lien. As to the defendants DeHaan, this contention is wholly without merit. It was previously pointed out in this opinion that there was no privity of contract between the plaintiff and the defendant DeHaans in the matter of the prime contract. The only basis on which a judgment against the De-Haans could be predicated, the lien, was lost by the failure to perfect it. The cases cited by the appellant to support the proposition that the lower court should have entered personal judgments against the DeHaans notwithstanding the invalidity of the lien all involve instances where there was privity of contract between the party whose lien failed and the homeowner. However, as to the other defendant, Stransky, the record indicates that counsel for plaintiffs moved that a default be entered against him, which motion was duly granted by the court. For some reason, this default was omitted from the findings of fact and conclusions of law and no judgment was entered against Stransky pursuant to his default. The judgment should have been entered against Stransky.

The cause is remanded to the district court to enter a judgment against the defendant Stransky. In all other matters the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and ADAIR concur.

MR. JUSTICE DOYLE specially concurring:

The statutes of Montana applicable to mechanics' and materialmen's liens as they presently appear in our codes are wholly inadequate for the protection of the home owner, who either remodels or purchases a home in good faith. R.C.M. 1947, §§ 45-501 to 45-512.

The history of these statutes can be found in Monarch Lumber Co. v. Haggard, 139 Mont. 105, 360 P.2d 794. These four cases were consolidated on appeal and decided April 7, 1961. The unanimous opinion decided a question of pleading. How-

ever, Mr. Justice Wesley Castles was compelled to accept our lien statutes as they are and had to state that "There is no provision in these statutes [mechanic and materialmen liens] whereby the materialman must file a notice with the *homeowner*, although section 45-502 provides that the lien must be filed with the county clerk of the county where the property is located." (Emphasis supplied.)

A more aggravated factual situation is found in Holland Furnace Co. v. Rounds, 139 Mont. 75, 360 P.2d 412, 91 A.L.R.2d 340. The unanimous opinion was written by Mr. Chief Justice James T. Harrison and decided on March 16, 1961, by this court.

The facts are brief and poignant. The defendant, a widow of 67 years of age, maintained herself by operating a rooming house. In February the furnace, heating her home, ceased operating and her nine roomers demanded heat which they were paying for. It appears that the plaintiff Company told the defendant widow that an essential part of the furnace was irreparably damaged, and believing this statement, the widow then borrowed the sum of $468 to purchase and install the new unit. On trial the evidence disclosed two vital answers, (1) that the unit in question was *NOT* irreparably damaged, and (2) that the unit could have been repaired for $50 or $418 less than the amount of the lien filed against the widow's property, *without notice to her*. This case is the exception to the rule, in that the jury found fraud, exonerated the widow from the claimed lien and this court sustained the verdict. The propriety of these liens are designed to protect and guarantee to the laborer, material supplier and honest contractor, payment of monies due him for labor, services, and material furnished in the construction as remodeling of a building or home. Seventy years ago this purpose was commendable as legalized larceny was not too prevalent in the hearts of some contractors and sub-contractors of that period.

However, in this day of high pressure promoters, our present

law is entirely inadequate to legally protect the citizen who remodels or improves his home, in that he has no protection from the "clip" artist extant as a part of our present day life.

The present operation of our lien laws tends to change, for some unfortunates, their lives and fortunes as a dam which alters the course of a river beyond it, for the balance of the years of their lives, in that the innocent home owner is not afforded *any protection* from the dishonest, unscrupulous contractor, builder or repairman who uses as a legal shield, our existing lien statutes.

This opinion has as its purpose, the motive of directing the attention of our Legislature to this evil, which only they can correct as this court, although cognizant of these many frauds, is not empowered to invade the province of our legislative bodies. The desired protective device can be achieved by a short amendment to our existing law.

The instant cause is a classic example of a citizen who constructs a home and to his surprise and outrage, also buys one or more lawsuits that he does not want and frequently finds financial embarrassment in paying for lawyers and court costs to defend.

The legislature of this state should promptly enact a statute that would make it mandatory for any contractor who furnishes work, labor or material in the building or repairing of any structure to, as a condition precedent, provide an acceptable surety bond which would, among other things, provide for the full payment of all materials, work and labor used or furnished to the structure by either the contractor or any subcontractors engaged in the work of building or repairing of the structure, or furnishing materials therefor.

Montana has long been a mecca for out of state "quick buck" promoters of everything from roof trees to lightning rods, at an astronomical price for shoddy, inferior materials and craftsmanship that descends to the nadir of competent work and skill.

Unless the average home owner is protected against this species of legalized bandits, devoid of even a gun or horse our gullible citizens will continue to be financial victims of one or more liens, acquired when building, buying or repairing a home.

The new lien law should be highly remedial in character, liberally construed to protect the unwary and provide for costs and attorney's fees from the surety bond, when a violation occurs.