No. 99-516

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 233

301 Mont. 304

8 P. 3d 795

GORDON C. BURNS and P. SEAN BURNS,

Plaintiffs and Appellants,

v.

A CASH CONSTRUCTION LIEN BOND posted

by HELENA COACH HOUSE PARTNERSHIP

filed under cause no. CDV-98-28,

Defendant and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael Scott Winsor; Winsor Law Firm, Helena, Montana

For Respondent:

Jock O. Anderson; Gough, Shanahan, Johnson & Waterman, Helena, Montana

Submitted on Briefs: February 3, 2000
Decided: August 24, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Gordon and Sean Burns (the Burnses) appeal the judgment and order of the First Judicial District Court.

¶2 We affirm.

¶3 We restate the issues as follows:

¶4 1. Whether the District Court erred in determining that Gordon and Sean Burns did not have valid construction liens.

¶5 2. Whether Respondent waived the defense of timeliness by failing to assert it as an affirmative defense.

Standard of Review

¶6 We review findings of fact to determine whether they are clearly erroneous. *See* Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review conclusions of law *de novo* to determine whether they are correct. *See* Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Factual and Procedural Background

¶7 In April, 1995 Helena Coach House Partnership (hereafter, the Partnership) entered an

agreement to sell Philip Keating (Keating) the King's Carriage Inn, a motel in Helena. The agreement required that Keating invest $70,000 for "building improvements and/or renovations" within one year of the closing and that Keating keep the property free of liens and encumbrances.

¶8 Keating hired Gordon Burns (Gordon) to renovate the motel's swimming pool. As that work neared completion, Keating and Gordon orally agreed that Gordon would perform maintenance and repairs and be on call for the motel at all times. Keating gave Gordon a salary and a room at the motel. On December 1, 1995 Gordon was terminated from his employment. Gordon performed no additional repairs or maintenance services for the motel after that date.

¶9 Keating also reached an oral agreement with Gordon's brother, P. Sean Burns (Sean), to perform heating and air conditioning maintenance and repair services at the motel. Sean's compensation included a salary and the use of a house located on the motel's property. Sean testified that he last performed maintenance services for Keating at some point in December, 1995. In January, 1996 Keating "left the Helena area, leasing the motel to Steve and Barbara Stolp."

¶10 On April 1, 1996 Gordon and Sean filed construction liens for $48,539.19 and $7,403.30, respectively. In June of 1996 the Partnership notified Keating that he was in default of their agreement because he had allowed the aforementioned liens to encumber the property and because he had failed to pay property taxes. Keating failed to cure the default. The Partnership repossessed the motel and posted a cash construction lien bond in order to sell a portion of the motel property. In March, 1998 Gordon and Sean filed a complaint[1] against the Partnership, seeking judgment against the bond pursuant to § 71-3-553, MCA.

¶11 A trial to the bench was held in March, 1999. The District Court determined that Gordon's lien was not timely filed and that Sean had not met his burden to prove by a preponderance of the evidence that he had a valid lien. The District Court ruled in favor of the Partnership. From that judgment and order Gordon and Sean appeal.

## Discussion

¶12 1. Whether the District Court erred in determining that Gordon and Sean Burns did not have valid construction liens.

¶13 Section 71-3-535, MCA, provides in pertinent part:

> **Attachment of lien--filing**. (1) A person's lien does not attach and may not be enforced unless, *after entering into the contract under which the lien arises*, the person *has filed a lien not later than 90 days after*:
>
> (a) the person's final furnishing of services or materials . . . .

Section 71-3-535, MCA (emphasis added).

*A. Whether Gordon Burns' lien was timely filed.*

¶14 The Burnses argue that the District Court's finding that Gordon Burns did not timely file his lien is clearly erroneous. The Burnses assert that Gordon Burns provided "materials" in the form of tools to the motel after December 31, 1995, thereby bringing him within the scope of § 71-3-535, MCA's requirement that a lien be filed not later than 90 days after the "final furnishing of services or materials." Section 71-3-535, MCA. The Burnses also assert that the evidence they presented shifted the burden of persuasion to the Partnership and that the Partnership failed to present "a shred of evidence to defeat the claims of any of the Appellants."

¶15 The Partnership responds that the District Court's finding that Gordon was terminated from his employment on December 1, 1995 and that he performed no additional repair and maintenance services thereafter is supported by Gordon's own testimony. Further, the Partnership argues that Gordon did not leave tools with the motel pursuant to his agreement with Keating.

¶16 We conclude that substantial credible evidence supports the District Court's finding that Gordon failed to timely file his construction lien. Gordon testified that he last provided services to Keating on December 13, 1995. On redirect, Gordon's counsel asked him "why the December 31st date is stated in the notice of lien as the last day?" Gordon responded that "[t]hey [staff at the motel] were still using some of my tools up until that date. In fact, beyond that date." On cross-examination, however, Gordon conceded that his services had been terminated before December 31, 1995 and that he had no agreement with Keating to be paid for the use of his tools after his services were terminated:

> Q. Was it [leaving tools at the motel] gratuitous on your part?

A. No.

Q. So what were you going to be paid?

A. I couldn't decide on that.

Q. Did you talk to Mr. Keating about it?

A. No, Mr. Keating had his hands full at that time.

. . . .

Q. Okay. Now, did you have a new agreement with him as to what he'd pay you for your tools?

A. No.

Gordon testified further that he told Stolp, but not Keating, that he was leaving tools on the premises.

¶17 Thus, Gordon's own testimony established that he ceased providing services to the motel well before December 31, 1995, a critical date for purposes of § 71-3-535, MCA's ninety-day requirement because Gordon's lien was filed on April 1, 1996. Further, Gordon testified that he did not leave tools on the premises of the motel pursuant to his agreement with Keating. We therefore reject the Burnses' contention that the tools Gordon left at the motel were a "final furnishing of services or materials" pursuant to "the contract [with Keating] under which the lien ar[ose]." Section 71-3-535, MCA. We hold that the District Court did not err in finding that Gordon's construction lien was not timely filed and in concluding that he did not have a valid lien.

*B. Whether Sean Burns met his burden of proof that he filed a valid lien.*

¶18 The Burnses argue that the District Court's findings regarding Sean are not supported by substantial evidence. Noting that Sean's notice and claim of lien stated that his last furnishing of services or materials occurred on March 31, 1996, the Burnses contend that Sean last performed services in March of 1996 "at the behest of the motel lessee" and that the filing of his lien on April 1, 1996 was therefore timely.

¶19 The Partnership responds that Sean "could not or would not testify as to when in December[,] 1995 he last performed services at the request of Keating." The Partnership argues that Sean only claimed a lien for work that he performed on behalf of Keating and that his lien claim does not extend to work that he performed for Stolp. Further, the Partnership argues that the District Court correctly concluded that although Sean "may have been able to file additional liens securing payment for [work that he did at the request of Stolp]," he failed to file such liens.

¶20 We agree. Although Sean testified that the last servicing he performed for Keating occurred in December, 1995, he could not recall when:

> Q. What day in December?
>
> A. Well, too many days. 31 of them. One of those days. Like I said, there's not a set date. You know, you go in on the 5th, you work 5th and 6th. Maybe go in on the 11th until you get them serviced. I serviced what was supposed to be.
>
> Q. All I'm saying, you don't know what day in December you performed the last services in that month?
>
> A. No sir, I don't recall.

Further, Sean testified that Stolp first began to manage the motel in January, 1996 and that he and Stolp did not agree to continue his services:

> Q. Now, I take it, then, that when Steve Stolp took over, you and he sat down and agreed that you were to continue the service?
>
> A. No. He said--his word was he would give me as much work as he possibly could.
>
> Q. Oh, so he gave--
>
> A. He never said one way or the other. He actually--he never sent me anything saying my contract was terminated.

Thus, Sean's testimony established that after December, 1995 the servicing he performed

was at the behest of Stolp, not Keating.

¶21 We conclude that Sean failed to show by a preponderance of the evidence that he performed work pursuant to his agreement with Keating on or after December 31, 1995, which again was the dispositive date for purposes of § 71-3-535, MCA's ninety-day filing requirement. Sean testified only that he worked "[o]ne of those days [in December];" he offered no testimony about the 31st of December that would make it more likely than not that he worked for Keating on that date. We note, moreover, that Sean could not tack the period of time when he worked for Stolp to the period when he worked for Keating in order to establish the validity of his lien. *See* Frank J. Trunk & Son, Inc. v. DeHaan (1964), 143 Mont. 442, 446, 391 P.2d 353, 355 (rejecting argument that subcontractor could tack "time period of a subsequent contract entered into between the subcontractor and the owner to the time period of the original prime contract" to establish that lien timely filed).

¶22 The District Court correctly concluded that Sean failed to meet his burden that he filed his lien within ninety days of Sean Burns' "final furnishing of services or materials" pursuant to "the contract [with Keating] under which the lien ar[ose]." Section 71-3-535, MCA. In light of this record, the Burnses' contention that they met and shifted their burden of persuasion to the Partnership concerning the validity of their liens is without merit.

¶23 2. Whether Respondent waived the defense of timeliness by failing to assert it as an affirmative defense.

¶24 We begin with the pertinent record. In paragraph 8 of their Complaint, the Burnses alleged that "[p]laintiffs filed notices of liens on the property commonly known as King's Carriage Inn which is more particularly described in the attached liens on April 1, 1996 and this action commenced within the time prescribed by § 71-3-562, M.C.A." In their Answer, the Partnership responded that "[d]efendant admits that Plaintiffs filed notices of liens and admits that this action was filed within two years of those filings, but denies that any of said filings constitute a valid lien."

¶25 The Burnses contend that the Partnership waived the issue of the timeliness of their lien filings "by failing to affirmatively plead the issue." Relying on this Court's decision in Brown v. Ehlert (1992), 255 Mont. 140, 841 P.2d 510, the Burnses argue that the timeliness of a construction lien is an affirmative defense and an avoidance that the Partnership failed to plead affirmatively as required by Rule 8(c), M.R.Civ.P.

¶26 The Partnership responds that there is no legal requirement that the timeliness of a lien be affirmatively pleaded and that timeliness is not an affirmative defense under Rule 8(c), M.R.Civ.P. Further, the Partnership argues that the Burnses had ample notice of the defense of timeliness and that timeliness was raised by both parties as an issue of fact and by the Partnership as a contention in the Pretrial Order.

¶27 Rule 8(c) provides in pertinent part:

> **Affirmative defenses**. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defense*.

Rule 8(c), M.R.Civ.P. (emphasis added). Thus, under Rule 8(c), M.R.Civ.P., the issue is whether the timeliness of the Burnses' liens is an affirmative defense or avoidance that the Partnership had to plead affirmatively.

¶28 The Burnses concede that the untimeliness of a lien's filing is not mentioned in Rule 8(c), M.R.Civ.P.'s list of affirmative defenses. Citing our decision in *Ehlert*, the Burnses note that Rule 8(c), M.R.Civ.P.'s list of affirmative defenses is not an exhaustive list. They are correct. However, their observation does not dispose of the question whether the timeliness of a lien's filing must be affirmatively pleaded.

¶29 We conclude that *Ehlert* does not support the Burnses' contention that the timeliness of a lien's filing must be affirmatively pleaded. In *Ehlert* we determined that

> The essence of affirmative defenses is to concede that while the plaintiff otherwise may have a good cause of action, the cause of action no longer exists because some statute or rule permits defendant to avoid liability for the acts alleged. Under these principles, exclusivity and co-employee immunity under the Workers' Compensation Act clearly constitute affirmative defenses. They do not go to the merits of Brown's personal injury complaint; rather, they assert that the Act protects Ehlert from liability for the very acts alleged by Brown.

*Ehlert, 255 Mont. at 146, 841 P.2d at 514. In raising the timeliness of the construction*

*liens, the Partnership did not "concede that while the [Burnses] otherwise may have a good cause of action, the cause of action no longer exists because [§ 71-3-535, MCA] permits [the Partnership] to avoid liability for the acts alleged." Ehlert, 255 Mont. at 146, 841 P.2d at 514. Rather, the defense of timeliness went "to the merits of [the Burnses'] complaint," because timeliness is an element of the Burnses' claim under § 71-3-535, MCA. Ehlert, 255 Mont. at 146, 841 P.2d at 514.*

¶30 One commentator has addressed whether defenses omitted from federal Rule 8(c) must be affirmatively pleaded and concluded:

> in determining what defenses other than those listed in Rule 8(c) must be pleaded affirmatively, resort often must be had to considerations of policy, fairness, and in some cases, probability. . . . "Fairness" should probably be viewed as a shorthand expression reflecting the judgment that all or most of the relevant information on a particular element of a claim is within the control of one party or that one party has a unique nexus with the issue in question and therefore that party should bear the burden of affirmatively raising the matter. . . . Another highly relevant consideration is whether plaintiff will be taken by surprise by the assertion at trial of a defense not pleaded affirmatively by defendant.

5 Wright & Miller, Federal Practice and Procedure: Civil 2nd § 1271 (1990).

¶31 In the present case, the Partnership's pleading of timeliness did not implicate considerations of fairness or surprise for the Burnses. Whether the Burnses timely filed their liens concerned relevant information "within the control of [the Burnses]." 5 Wright & Miller, Federal Practice and Procedure: Civil 2nd § 1271 (1990). Further, § 71-3-535, MCA's ninety-day filing requirement gave the Burnses notice that they had to establish the validity of their liens.

¶32 In Sterrett v. Milk River Credit (1988), 234 Mont. 459, 764 P.2d 467, we distinguished affirmative defenses from negative defenses and concluded that Rule 8(b), M.R.Civ.P., "is concerned with negative defenses--those that controvert the adversary's claim. Rule 8(c), on the other hand, is concerned with affirmative defenses--the pleading of matter that is not within the claimant's prima facie case." *Sterrett*, 234 Mont. at 463-64, 764 P.2d at 469 (citation omitted). In the present case, the Partnership's specific denial that the Burnses' lien filings constituted valid liens was a negative defense that "warned [the Burnses] that they must prove [the validity of their liens] as part of [their] prima facie

case." *Sterrett*, 234 Mont. at 464, 764 P.2d at 470 (citation omitted).

¶33 The Partnership's Answer appropriately underscored the Burnses' burden of proof regarding the validity of their liens, a lien claimant's burden that we have previously recognized. *See* Tri-County Plumbing v. Levee Restorations (1986), 221 Mont. 403, 409, 720 P.2d 247, 251 (citation omitted) (emphasis added) (concluding that "under Montana law a mechanic's lien claimant does not have a right to a lien until he can prove or show his lien. *'The burden is upon the plaintiff to establish his lien'* . . ."). We hold that the Partnership did not have to affirmatively plead the timeliness of the filing of the Burnses' liens.

¶34 The Burnses also argue that the Partnership is collaterally estopped from contesting the validity of their liens. The Burnses assert in essence that the Partnership's default action against Keating "necessarily decided" the validity of their liens. The Burnses' conclusory assertion is without merit; they have made no showing why the general rule "that a default judgment generally carries no collateral estoppel effect" does not apply in the present case. Lane v. Farmers Union Ins., 1999 MT 252, ¶ 36, 296 Mont. 267, ¶ 36, 989 P.2d 309, ¶ 36 (citations omitted). *See also* In re Palmer (9th Cir. 2000), 207 F.3d 566, 568 (citations omitted) (recognizing "that a default judgment is generally not entitled to collateral estoppel effect because there is no actual litigation of issues").

¶35 Finally, we note the Burnses' argument that the District Court abused its discretion by "not interpreting the construction lien statutes liberally in favor of the Appellants and applying principles of equity." As the procedural requirements of lien statutes are strictly enforced, the Burnses' argument necessarily assumes that the timeliness of a lien is not a procedural requirement. *Compare* Swain v. Battershell, 1999 MT 101, ¶ 26, 294 Mont. 282, ¶ 26, 983 P.2d 873, ¶ 26 (concluding "[t]his Court has consistently held that the procedural requirements of construction lien statutes will be strictly construed"). The Burnses are mistaken; § 71-3-535, MCA's ninety-day filing requirement is an express procedure that claimants must follow to establish valid liens.

¶36 The Burnses failed to satisfy the *procedural* requirement that their liens be timely filed. Having failed to establish the validity of their liens, they cannot avail themselves of the remedial purpose of the construction lien statutes.

¶37 The judgment of the District Court is Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

1. They were joined by Pat Osterhout, who managed the motel for Keating until November, 1995. Osterhout is not a party on appeal.