No. 97-317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 204

JEANNIE CAMPBELL,

Plaintiff and Appellant,

v.

BOZEMAN INVESTORS OF DULUTH,

a Minnesota Limited Partnership, d/b/a

HOLIDAY INN OF BOZEMAN; and

PATRICK N. LUND,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Michael A. Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen C. Pohl, Bozeman, Montana

For Respondent:

William M. O'Leary, Corette Pohlman Allen Black & Carlson, Butte, Montana

Submitted on Briefs: October 9, 1997

Decided: August 24, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 Jeannie Rosseland Campbell (Campbell) brought an action in the District Court for the Eighteenth Judicial District, Gallatin County, to recover damages from Bozeman Investors of Duluth d/b/a Holiday Inn of Bozeman and Patrick Lund for personal injuries she sustained in a motor vehicle collision. Two of Campbell's attorneys in this action, Channing Hartelius (Hartelius) and Gregory Morgan (Morgan), filed a Notice of Lien claiming entitlement, from the proceeds of Campbell's claim, to payment of their costs and attorney fees as well as reimbursement for advances made to Campbell. The District Court found the lien to be valid and awarded judgment in favor of Hartelius and Morgan. From this judgment Campbell appeals; Hartelius and Morgan cross-appeal. We affirm.**

**¶2 The issues, as framed by this Court, are:**

**¶3 1. Whether the District Court erred in concluding that Hartelius and Morgan are entitled to attorney fees totaling $8800.**

¶3 2. Whether this Court may consider the medical report of Dr. Peter Wendt.

¶4 3. Whether the District Court erred in failing to require that Campbell reveal the amount she received as settlement of her claim.

Factual and Procedural Background

¶5 On December 3, 1992, Campbell was seriously injured when her vehicle collided with a van operated by Patrick Lund (Lund). The van was owned by Lund's employer, Bozeman Investors of Duluth d/b/a the Holiday Inn of Bozeman (Bozeman Investors). Bozeman Investors' insurer paid Campbell for the damage to her vehicle as well as $4,000 to $5,000 of her medical bills.

¶6 In January 1994, Bozeman Investors' insurer made an unsolicited offer to settle Campbell's claim for the sum of $22,000, less the amounts already paid for medical care and for the damage to Campbell's vehicle. Campbell, who had not yet consulted a physician to determine the extent of the injuries to her back, rejected the offer. On April 29, 1994, Campbell filed a personal injury action against Lund and Bozeman Investors.

¶7 Campbell had retained Stephen Pohl (Pohl) to represent her in her personal injury action. However, when Campbell separated from her husband in November 1994, she perceived that there existed a possible conflict of interest with Pohl as Campbell had originally been referred to Pohl by Campbell's mother-in-law for whom Pohl had performed legal services.

¶8 Consequently, on December 8, 1994, Campbell entered into a contingent fee agreement with Hartelius and Morgan to render legal services in her suit against Bozeman Investors. The agreement provided that Campbell was to pay Hartelius and Morgan "33 - 1/3% OF ANY SETTLEMENT OBTAINED IN SAID CASE IF SAME IS SETTLED AT ANY TIME PRIOR TO INSTITUTING SUIT AND 40% OF ANY SETTLEMENT OBTAINED IN SAID CASE IF SAME IS SETTLED AT ANY TIME AFTER INSTITUTION OF SUIT." Pohl provided a complete copy of Campbell's file to Hartelius and Morgan and agreed to wait until the case was resolved to receive reimbursement for costs he expended on Campbell's behalf. Hence, on April 19, 1995, Hartelius and Morgan were substituted as counsel of record.

¶9 By this time, Campbell had quit her job and was attending physical therapy on a regular basis. She was also receiving treatment from a surgeon in Billings and was looking into going to a specialist in Minnesota to determine whether she required back surgery.

¶10 In April 1995, counsel for Bozeman Investors deposed Campbell. Although neither Hartelius nor Morgan met with Campbell in person before her deposition, Hartelius spoke with her on the phone and attended the deposition. It was determined at the deposition that Bozeman Investors had not been provided with copies of all of Campbell's medical records.

¶11 In June 1995, Campbell was examined by Dr. Michael Smith, an orthopedic surgeon in Minneapolis, Minnesota. Dr. Smith indicated that he would perform the necessary surgery on Campbell's back. However, in August 1995, Campbell learned that Medicaid would not pay for an operation performed out-of-state, thus she was forced to seek another surgeon. Campbell contacted Dr. Greg McDowell, a Billings orthopedist, who agreed to perform the surgery.

¶12 During this time, Campbell was experiencing financial difficulties since she was not working and had not received any further payments for her medical bills from Bozeman Investors. She had applied for Social Security disability benefits, but was turned down on December 1, 1995. Consequently, Hartelius obtained approval from this Court to loan money to Campbell for her living expenses. To that end, Hartelius loaned her $2,745.29.

¶13 On May 6, 1996, Campbell sent a letter to Hartelius and Morgan expressing dissatisfaction with their services and discharging them. Campbell later testified that she became dissatisfied with Hartelius and Morgan because they never wrote to Bozeman Investors' insurer requesting an advance payment for medical costs for surgery, did not request that a trial date be set, and did not adequately advise her about obtaining Social Security disability benefits. Hence, on June 6, 1996, Campbell filed a motion for substitution of counsel, requesting that Pohl be substituted as attorney of record in place of Hartelius and Morgan. The court granted her motion on June 25, 1996.

¶14 After they were dismissed by Campbell, Hartelius and Morgan refused to turn

over her file to Pohl. On July 11, 1996, they filed a Notice of Lien claiming entitlement from the proceeds of Campbell's claim against Bozeman Investors for payment of their costs and attorney fees and requesting reimbursement for the money they had advanced her.

¶15 On October 22, 1996, Campbell was examined at the request of Bozeman Investors' attorney by Dr. Peter Wendt, an orthopedic surgeon practicing in Anaconda. A settlement conference was held in December 1996, at the conclusion of which Campbell's personal injury claim against Bozeman Investors was settled. In accordance with the terms of the settlement, the amount of the settlement was kept confidential. On April 3, 1997, a Stipulation and Order of Dismissal was filed by Campbell and Bozeman Investors and the District Court entered its order dismissing with prejudice Campbell's claim against Bozeman Investors.

¶16 After the settlement of Campbell's claim, Hartelius and Morgan were reimbursed for the full amount of the costs and advances as itemized in their Notice of Lien, but they did not receive any payment for attorney fees. Instead, Campbell filed a motion for determination of attorney fees and for the release of the lien. At the January 13, 1997 hearing on this motion, both Campbell and Hartelius presented sworn testimony.

¶17 On March 5, 1997, the District Court entered its Findings of Fact and Conclusions of Law wherein the court determined that Hartelius was entitled to a fee of $6,600 and that Morgan was entitled to a fee of $2,200. The court entered judgment in accordance with these findings and conclusions on March 14, 1997.

¶18 Campbell appeals from the District Court's judgment regarding attorney fees and Hartelius and Morgan cross appeal.

Issue 1.

¶19 *Whether the District Court erred in concluding that Hartelius and Morgan are entitled to attorney fees totaling $8800.*

¶20 The District Court concluded that a client's right to discharge an attorney employed under a contingency fee contract is an implicit term of the contract and the client's discharge of the attorney, with or without cause, does not constitute a breach

of that contract. The court further concluded that a client who discharges an attorney employed under a contingency fee contract for cause has no obligation to pay a fee to that attorney unless the attorney has substantially performed the services for which he was retained.

¶21 On that basis, the court determined that Campbell had not breached the contract by discharging Hartelius and Morgan. Moreover, the court determined that although Hartelius and Morgan were discharged for cause, they substantially performed the services for which they were retained prior to their discharge. Therefore, they were entitled to a fee limited to the reasonable value of their services. Thus, the court awarded $6600 to Hartelius and $2200 to Morgan.

¶22 The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co. Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686. *See also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

¶23 First, we must determine whether, as Hartelius and Morgan contend, a client's discharge of his or her attorney is a breach of contract thus entitling the attorney to contract damages. We hold that it is not and does not.

¶24 In 1916, the New York Court of Appeals held that a contract under which an attorney is employed by a client has peculiar and distinctive features which differentiate it from ordinary contracts of employment, thus a client may, at any time for any reason or without any reason, discharge his or her attorney. *Martin v. Camp* (N.Y. 1916), 114 N.E. 46, 47-48, *modified* 115 N.E. 1044. Thus, the court reasoned that if the client has the right to terminate the relationship of attorney and client at any time without cause, the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract. *Martin*, 114 N.E. at 48. The court held that although the attorney may not recover damages for breach of contract, the attorney may recover the reasonable value of the services rendered. *Martin*, 114 N.E. at 48.

¶25 A majority of jurisdictions have since adopted the "client discharge rule" as set forth in *Martin*. (For a list of these jurisdictions, see Lester Brickman, *Setting the Fee when the Client Discharges a Contingent Fee Attorney* (Spring 1992), 41 Emory L.J.

**367 n.37.) One such jurisdiction noted:**

> The attorney-client relationship is one of special trust and confidence. The client must rely entirely on the good faith efforts of the attorney in representing his interests. This reliance requires that the client have complete confidence in the integrity and ability of the attorney and that absolute fairness and candor characterize all dealings between them. These considerations dictate that clients be given greater freedom to change legal representatives than might be tolerated in other employment relationships.

*Rosenberg v. Levin* (Fla. 1982), 409 So.2d 1016, 1021. Another jurisdiction stated the following regarding the payment of damages for exercising the right to discharge an attorney:

> To allow an attorney to recover damages for services not actually rendered prior to termination of the attorney-client relationship would penalize the client in direct contravention of the client's absolute right to discharge his attorney. The right to discharge is obviously meaningless if the client is penalized by having to pay for services that have not been rendered. The client could conceivably be required to pay duplicate charges consisting of fees to the discharged attorney for services not rendered, in addition to those incurred by a newly appointed attorney for the same work.

*Olsen and Brown v. City of Englewood* (Colo. 1995), 889 P.2d 673, 676-77 (citations omitted).

**¶26 Finding considerable merit in the "client discharge rule" as expressed in *Martin*, *Rosenberg*, and *Olsen*, we follow those jurisdictions in holding that the discharge of an attorney by a client is not a breach of contract and does not give rise to contract damages. Therefore, we affirm the District Court on this issue.**

**¶27 We next must determine whether Hartelius and Morgan are entitled to a fee and on what basis that fee, if any, should be determined. The District Court concluded that Hartelius and Morgan were discharged for cause, however, they substantially performed the services for which they were retained and are thus entitled to a fee based on the reasonable value of the services rendered. Campbell alleges error in the court's determination arguing instead that this Court should formally adopt a rule**

that an attorney discharged for cause is not entitled to any fee. She contends that we endorsed a similar rule in *Bink v. First Bank West* (1991), 246 Mont. 414, 804 P.2d 384. However, Campbell's reliance on *Bink* is misplaced.

¶28 In *Bink*, we remanded the case to the district court for an evidentiary hearing to determine whether the client discharged his attorney for cause and to determine the amount of attorney fees and costs. We did not, as Campbell suggests, endorse any rule espousing the idea that an attorney discharged for cause is not entitled to a fee and we decline to adopt such a rule now.

¶29 Instead, we agree with those jurisdictions that hold that regardless of whether an attorney was discharged with or without cause, that attorney is entitled to a *quantum meruit* recovery for the reasonable value of his services rendered to the time of discharge. *Fracasse v. Brent* (Cal. 1972), 494 P.2d 9, 14-15. We note one exception to this general rule, however--situations where the discharge occurs "on the courthouse steps," just prior to settlement and after much work by the attorney. In those cases some reviewing courts have, on appropriate facts, found that the entire fee was the reasonable value of the attorney's services. *Fracasse*, 494 P.2d at 14. Here, however, Hartelius and Morgan were not discharged "on the courthouse steps," and, accordingly, we need not address this exception. Rather, the general *quantum meriut* rule applies.

¶30 Moreover, in the case *sub judice*, because we have determined that the general rule applies, it is not necessary for us to entertain a discussion of the reasons *why* Campbell discharged Hartelius and Morgan or whether those reasons constituted "cause." Rather, we review whether the District Court was correct in concluding that the reasonable value of the services rendered by Hartelius and Morgan was $6600 and $2200, respectively.

¶31 Hartelius testified at the hearing that he does not normally record his time in contingency fee cases, so he had to reconstruct the time he spent on the case. Thus, he estimated that he spent at least 100 hours on the case, his paralegal spent an additional 50 hours on the case and Morgan spent 22 hours on the case. At the conclusion of the hearing, the parties stipulated that the attorney fees on an hourly basis for Hartelius and Morgan would be $110.

¶32 Campbell contends that there was no evidence presented at the hearing to

demonstrate the value of the services Hartelius and Morgan performed, thus the evidence was insufficient to award them any fee. Moreover, she contends that the fee should be based on the reasonable value to her of their services. She argues that, because Hartelius and Morgan did not turn her file over to her after she discharged them, their services did not benefit her in the settlement of her case and that her case was settled mainly on the basis of a report from a doctor with whom Hartelius and Morgan had no involvement.

¶33 "The amount fixed as attorney fees is largely discretionary with the District Court, and we will not disturb its judgment in the absence of an abuse of that discretion." *Talmage v. Gruss* (1983), 202 Mont. 410, 412, 658 P.2d 419, 420 (citing *Carkeek v. Ayer* (1980), 188 Mont. 345, 347, 613 P.2d 1013, 1015). Additionally, we stated in *Talmage* that the question in determining whether the trial court abused its discretion, is not whether we agree with the trial court, but rather,

> did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice.

*Talmage*, 202 Mont. at 412, 658 P.2d at 420 (quoting *Porter v. Porter* (1970), 155 Mont. 451, 457, 473 P.2d 538, 541). Moreover, in *First Security Bank of Bozeman v. Tholkes* (1976), 169 Mont. 422, 429-30, 547 P.2d 1328, 1332, we set forth several guidelines for a trial court to consider in determining the amount to be awarded as reasonable attorney fees:

> the amount and character of the services rendered, the labor, time and trouble involved, the character and importance of the litigation in which the services were rendered, the amount of money or the value of property to be affected, the professional skill and experience called for, the character and standing in their profession of the attorneys. . . . The result secured by the services of the attorneys may be considered as an important element in determining their value.

¶34 We hold that, in the case before us, the District Court did not act arbitrarily, exceed the bounds of reason or ignore recognized principles in determining the amount of attorney fees to be awarded to Hartelius and Morgan. In its Findings of Fact Nos. 27 and 28, the District Court set forth ten specific instances in the record

evidencing work performed by Hartelius and Morgan on Campbell's behalf prior to their discharge. The court then applied those facts to the guidelines set forth in *Tholkes* in determining the amount to be awarded as reasonable attorney fees. Furthermore, contrary to Campbell's contention, the court did not award attorney fees based solely on Hartelius' estimate of the number of hours he worked on the case or for the hours he estimated his paralegal worked on the case. Rather, the court determined that a reasonable fee for Hartelius was $6600. Based on the hourly fee of $110 stipulated to by the parties, the court determined that it was reasonable for Hartelius to have put in 60 hours on Campbell's case.

¶35 Accordingly, we hold that the District Court did not abuse its discretion in awarding attorney fees to Hartelius in the amount of $6600 and to Morgan in the amount of $2200.

¶36 Having reached this decision, we are, nonetheless, compelled to address one further troubling aspect of this issue--the failure of Hartelius and Morgan, after their discharge by Campbell, to turn Campbell's file over to either Campbell or Pohl.

¶37 In 1988, the Ethics Committee of the State Bar of Montana issued an opinion asserting that client files belong to the client and that if representation is ongoing and the lawyer is discharged, that lawyer must still protect the client's interests and surrender papers and property to successor counsel. Ethics Committee of the State Bar of Montana, Formal Op. 880218 (1988). While ethics opinions are advisory only and are not authoritative pronouncements of the law, this opinion is significant. In making its determination, the Ethics Committee relied on Rule 1.16(d) of the Montana Rules of Professional Conduct which provides, in pertinent part:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . .

¶38 Campbell argues that she was prejudiced by the failure of Hartelius and Morgan to turn her file over to her because she was without the benefit of the information in the file during settlement negotiations. Hartelius and Morgan contend that Campbell was not prejudiced by their refusal to turn over her file and that their refusal to do so was justified by their possessory lien. We see no justification for failing to return to a client at the time of discharge, papers or property that rightfully belong to the

client. Campbell's claim was still ongoing and by retaining her file, Hartelius and Morgan failed to protect her interests.

Issue 2.

¶39 *Whether this Court may consider the medical report of Dr. Peter Wendt.*

¶40 Several months after Campbell discharged Hartelius and Morgan, Campbell was examined, at the request of Bozeman Investors' attorney, by Dr. Peter Wendt, an orthopedic surgeon practicing in Anaconda. In his report, Dr. Wendt rendered several opinions that were favorable to Campbell and to the issues in her case. Shortly after Dr. Wendt issued his report, a settlement conference was held at the conclusion of which Campbell's personal injury case was settled.

¶41 Hartelius and Morgan contend that Dr. Wendt's report should not be considered as part of the record on appeal as it was submitted after the hearing and is irrelevant to the issues of termination of services or the amount of the fee earned. However, as Campbell points out, since she did not have a copy of the report at the hearing, the parties stipulated that the report would be admitted as Plaintiff's Exhibit No. 4 after the conclusion of the hearing. Hartelius and Morgan did not object to the admission of the report, thus they cannot now predicate error on its admission.

¶42 This Court has long held that a party may not raise for the first time on appeal alleged errors pertaining to the introduction of evidence or testimony that was not objected to at the time of trial. *Flanigan v. Prudential Federal Sav. & Loan* (1986), 221 Mont. 419, 430, 720 P.2d 257, 264.

Issue 3.

¶43 *Whether the District Court erred in failing to require that Campbell reveal the amount she received as settlement of her claim.*

¶44 Hartelius and Morgan contend that the District Court should have required Campbell to reveal the amount of the settlement. They argue that the court cannot effectively determine the amount of attorney fees owed until the settlement amount is known. We disagree. The amount of the settlement would only be necessary if the attorney fees were to be based on a percentage of that figure. Since we have already

**determined that Hartelius and Morgan are entitled only to the value of the services rendered, the amount of the settlement is immaterial.**

**¶45 Accordingly, we affirm the District Court's denial of Hartelius and Morgan's request to force Campbell to disclose the settlement amount.**

**¶46 Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART