No. 02-562

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 39

JOHN J. ROSSI and CHERYL K. ROSSI,

        Plaintiffs and Appellants,

    v.

KAI PAWIROREDJO,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 2001-801,
                    Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Terry L. Seiffert, Attorney at Law, Billings, Montana

        For Respondent:

                Jeff A. Turner, Oliver, Pardy & Associates, P.C., Billings, Montana

Submitted on Briefs:   January 23, 2003

Decided:   February 24, 2004

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      John and Cheryl Rossi (collectively, Rossis) brought this action to set aside a construction lien filed against their property by Defendant, Kai Pawiroredjo (Kai), and for damages for Kai's defective workmanship.  Kai counterclaimed to foreclose the construction lien.  The Thirteenth Judicial District Court, Yellowstone County, entered judgment in favor of Kai and awarded him attorney fees.  Rossis appeal.  We affirm in part, vacate the award of attorney fees, and remand for further proceedings.

¶2      The Rossis raise the following issues on appeal:

¶3      1. Did the District Court err in finding the construction lien was timely filed?

¶4      2. Did the District Court err in failing to consider damages from defective workmanship?

¶5      3. Did the District Court err in awarding attorney fees without a hearing?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6      In January 2001, the Rossis hired Kai to do remodeling work in their Billings, Montana, home, which was in deteriorating condition. Over the course of the next several months, Kai completely remodeled the Rossis' kitchen and bathroom, and worked on the living, dining, and sun room areas.

¶7      The parties disputed the terms of their remodeling agreement at trial, which was not in writing.  According to the Rossis, they agreed to purchase the bulk of materials and pay Kai a total of $5,000 for the entire remodeling project.  Kai, on the other hand, maintained that the parties entered separate oral agreements for the remodeling of the kitchen, bathroom,

2

and remaining areas, under which he was entitled to receive a total of $11,390 for his labor and materials.

¶8      However, by the end of March 2001, Kai had only received $3,800 from the Rossis. As a result, Kai ceased working on the Rossis' residence on April 6, 2001. After receiving some payment, Kai returned to the Rossis' residence on June 11, 2001, to attempt to remove stains from the sun room's tile floor, which he had previously installed, and which had become stained as a result of not being properly sealed during installation.

¶9      On June 25, 2001, the Rossis made their final payment to Kai, bringing their total payments to $5,000. On September 7, 2001, Kai filed a construction lien against the Rossis' property, asserting a balance due and owing of $6,390, plus interest at 10 percent per annum. The Rossis thereafter brought suit to set aside the construction lien, asserting that $5,000 was the agreed upon contract price and that the construction lien was ineffective as it was untimely filed. The Rossis additionally sought damages for defective workmanship, primarily on the basis that the sun room tile floor became stained as a result of not being properly sealed during installation. Kai denied the allegations of defective workmanship and counterclaimed to foreclose on the construction lien.

¶10     A non-jury trial was held on April 24, 2002. The following day, the District Court submitted its Findings of Fact and Conclusions of Law, ruling in favor of Kai as to the value of the work performed, the validity of the lien, foreclosure of the lien, and awarding Kai attorney fees and costs. In particular, the District Court found that the quality of Kai's work was far above average, that he had performed according to the terms of the parties' oral

agreements, and that the Rossis had instructed him not to seal the tile floor in the sun room as they wished to do so themselves. The court additionally noted that the Rossis sought to remodel and repair their home in the cheapest manner possible, and had hired Kai knowing that he was not a licensed contractor.

¶11 On May 16, 2002, pursuant to the court's award of attorney fees, Kai's counsel submitted a memorandum of fees and costs, and the Rossis objected. On June 6, 2002, in the absence of an evidentiary hearing, the District Court issued an order awarding Kai $7,166.40 in attorney fees and $283.94 in costs. From this Order and the District Court's Findings of Fact and Conclusions of Law, the Rossis appeal.

## STANDARD OF REVIEW

¶12 We review a district court's findings of fact to determine if they are clearly erroneous. *Burns v. A Cash Construction Lien Bond*, 2000 MT 233, ¶ 6, 301 Mont. 304, ¶ 6, 8 P.3d 795, ¶ 6. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Tungsten Holdings, Inc. v. Olson*, 2002 MT 158, ¶ 13, 310 Mont. 374, ¶ 13, 50 P.3d 1086, ¶ 13. Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Barrett v. Asarco, Inc.* (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080.

4

¶13 Finally, we review a district court's conclusions of law *de novo* to determine whether they are correct. *Burns*, ¶ 6.

## DISCUSSION

¶14 **Did the District Court err in finding the construction lien was timely filed**?

¶15 Kai initially ceased working on the Rossis' residence on April 6, 2001. On June 11, 2001, Kai returned to the residence accompanied by an agent from Home Depot to attempt cleaning of the sun room's tile floor, which had become stained after installation. However, after approximately forty-five minutes of scrubbing the tile with a brush, water, and cleaning agents, Kai concluded the stains could not be removed. At trial, the parties generally agreed that the cleaning attempt was unsuccessful.

¶16 On September 7, 2001, 88 days later, Kai filed a construction lien against the Rossis' residence, asserting a balance due and owing of $6,390, plus interest. The District Court concluded the lien was timely because Kai had worked on the property within the previous 90 days by virtue of his work on June 11, 2001, which it concluded was done for the sole purpose of enhancing the property's value, and not in an effort to extend the time period for filing a construction lien.

¶17 On appeal, the Rossis contend the District Court erred in finding the lien was timely filed. They maintain that in order to extend the time period for filing a construction lien, the work performed must have rendered a tangible improvement to the property. Since the parties agree that the June 11, 2001 cleaning attempt was unsuccessful, the Rossis argue that this work did not constitute a tangible improvement, and thus, did not extend the lien filing

5

period.  They contend the last date of actual work performed occurred on April 6, 2001, and that, therefore, the September 7, 2001 filing was untimely, and the lien is invalid.

¶18    Section 71-3-535, MCA (2000), controls the attachment of a construction lien and provides in pertinent part:

> **Attachment of lien–filing.**  (1) A person's lien does not attach and may not be enforced unless, *after entering into the contract under which the lien arises, the person has filed a lien not later than 90 days after*:
> (a) the person's final furnishing of services or materials . . .

(Emphasis added.)  "While it is true that performing additional, insubstantial work will not extend the 90 day time limit for filing a lien, this Court will give credence to the lower court's determination that the subcontractor's work was substantial if the final work was done to enhance the value of the construction project, not to extend the time of the lien." *Frank L. Pirtz Construction, Inc. v. Hardin Town Pump, Inc.* (1984), 214 Mont. 131, 138, 692 P.2d 460, 464.

¶19    Kai testified that he returned to the Rossis' residence on June 11, 2001.  Assuming *arguendo*, that Kai's final work on the property was on April 6, 2001, he would have had until July 5, 2001, to file his lien.  Thus, on June 11, 2001, almost a full month remained for Kai to file a lien, and there was no apparent need to extend the lien filing period.  Consistent therewith, Kai testified that, at that time, he was unaware he could file a lien against the Rossis' property in order to secure payment for his labor and materials.  This evidence supports the District Court's finding that the work performed on June 11, 2001, was not done to extend the time period for filing the lien, but for the purpose of enhancing the value of the property.

6

¶20   Furthermore, the fact that the cleaning was unsuccessful or insignificant in relation to the overall work performed is not conclusive with regard to extending the time for filing a lien.  In *Walsh-Anderson Co. v. Keller* (1961), 139 Mont. 210, 217, 362 P.2d 533, 537, we held that delivery of two plywood sheets costing less than four dollars each extended the time for filing a construction lien, where the purpose of furnishing the sheets was to build planters to place in homes in order to enhance salability.  *See also Pirtz Construction*, 214 Mont. at 139, 692 P.2d at 464 (lien filed more than six months after last working day but less than ninety days after construction company's subcontractor was called in by owner to re-install carpet was timely, even though the carpeting work, valued at approximately $500, was not billed to the owner).   So long as the final work was done for the purpose of enhancing the value of the project, it will generally be sufficient to extend the time for filing a construction lien.

¶21   Here, substantial credible evidence supports the District Court's finding that the work performed on June 11, 2001, was to enhance the value of the property, and not solely to extend the time for filing the lien.  Because the construction lien was filed within the statutory period, we hold the District Court did not err in concluding that Kai had a valid lien.

¶22   **Did the District Court err in failing to consider damages from defective workmanship?**

¶23   The Rossis contend the District Court erred by adopting Kai's proposed findings of fact and conclusions of law almost verbatim, and in disregarding evidence of damages caused

7

by defective workmanship. At trial, both parties presented substantial evidence detailing the quality of the work performed. The Rossis presented testimony that the tile in the mud room and kitchen was incorrectly installed, which caused it to be structurally unsound, and had not been properly sealed during installation, which resulted in staining. To correct the problem, the Rossis presented evidence indicating that the tile would need to be replaced, and would cost approximately $5,700.

¶24 In response, Kai offered the testimony of Jeff Sivertson, an experienced builder, who attested to the overall quality of Kai's work, given the condition of the home, the Rossis' tight budget, and the grade of materials used. Kai additionally presented evidence that the Rossis were pleased with his performance and recommended his work to others.

¶25 After weighing the evidence, the District Court concluded that "the plaintiffs got a heck of a lot of competent work for a very good price. Plaintiffs appear to want to benefit from the defendant's work, which substantially improved their home, and not pay Defendant." The court noted that the Rossis had hired Kai knowing he was not a licensed contractor, but had home remodeling experience, and were pleased with his overall performance. The court additionally found that the Rossis wished to seal all the tile themselves, and refused to pay Kai to seal the tiles. Although the lack of tile sealant later became a source of major concern for the Rossis, the District Court concluded that Kai could not be held liable for the damages resulting therefrom, as the Rossis had agreed to do this work themselves.

¶26 We have held that "our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." *In re Marriage of Jensen* (1981), 193 Mont. 247, 253, 631 P.2d 700, 703. Although we have discouraged the practice of adopting verbatim the proposed findings and conclusions submitted by a party, we recognize that, once adopted, the findings become formally those of the district court judge, and are not to be overturned simply because the court relied upon proposed findings and conclusions submitted by counsel. *Moore v. Hardy* (1988), 230 Mont. 158, 162, 748 P.2d 477, 480, *overruled on other grounds by Turner v. Mtn. Engineering & Const. Inc.* (1996), 276 Mont. 55, 62, 915 P.2d 799, 803.

¶27 In this case, the court's findings, while resembling those submitted by Kai, are supported by substantial credible evidence in the record. The court was presented with conflicting testimony concerning the adequacy of Kai's performance and resolved this disagreement in favor of Kai. "It is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations. . . . Moreover, we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary findings." *Koeppen v. Bolich*, 2003 MT 313, ¶ 47, 318 Mont. 240, ¶ 47, 79 P.3d 1100, ¶ 47 (citation omitted). Here, the record contains sufficient evidence upon which the District Court could base its findings. Accordingly, we uphold the District Court.

¶28 **Did the District Court err in awarding attorney fees without a hearing?**

9

¶29 The parties agree that the District Court erred in calculating the award of attorney fees based solely upon an affidavit of counsel. As the parties correctly note, this Court has consistently held that it is improper to award attorney fees based solely on the affidavit of counsel without holding an evidentiary hearing on the matter. *Stark v. Borner* (1988), 234 Mont. 254, 258, 762 P.2d 857, 860. We have stated that "[a]n award of fees, like any other award, must be based on competent evidence. . . . Furthermore, the proper determination of a legal fee is central to the efficient administration of justice and the maintenance of public confidence in the bench and bar." *First Sec. Bank v. Tholkes* (1976), 169 Mont. 422, 429, 547 P.2d 1328, 1332 (citation omitted). Here, evidence should have been introduced in the District Court at an evidentiary hearing to demonstrate the proper amount of attorney fees due to Kai. Without consideration of such evidence, the award of attorney fees in the amount of $7,166.40 was improper. Accordingly, the judgment of the District Court on the issue of attorney fees is vacated, and the cause remanded for an evidentiary hearing to determine the proper amount of attorney fees to be awarded.

¶30 As a final matter, Kai requests attorney fees for this appeal. Section 71-3-124, MCA, expressly mandates an award of attorney fees–in both the district court and this Court–to a person who successfully establishes a construction lien. Kai having established his lien and having been subjected to an appeal to this Court, we conclude that he is entitled to attorney fees for this appeal. Therefore, at the evidentiary hearing to be held on remand, the District Court shall also determine the proper amount of attorney fees to be awarded to Kai as a result of defending this appeal.

¶31   Affirmed in part, vacated in part, and remanded.


                                        /S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART