No. 05-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 255

_____

LISA BROTHERTON PUMPHREY and SEAN
PUMPHREY,

        Plaintiffs and Respondents,

   v.

EMPIRE LATH AND PLASTER, a Montana
corporation, and RICK LEE PAGITT,

        Defendants,

EDWARDS, FRICKLE, ANNER-HUGHES, COOK
& CULVER (EDWARDS LAW FIRM),

        Appellant.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone, Cause No. DV 03-1186
                 The Honorable Russell C. Fagg, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           A Clifford Edwards, Edwards, Frickle, Anner-Hughes, Cook & Culver,
           Billings, Montana

       For Respondents:

           John G. Crist, Crist Law Firm, Billings, Montana


                             _____
                                  Submitted on Briefs:  May 10, 2006
                                       Decided:  October 5, 2006

Filed:

                     _____
                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 The law firm of Edwards, Frickle, Anner-Hughes, Cook & Culver (Firm) appeals from an order of the Thirteenth Judicial District, Yellowstone County, granting the Firm $3,750 in attorneys' fees. We reverse and remand.

¶2 The Firm's appeal presents the following issue:

¶3 Whether the District Court properly determined the amount of attorneys' fees owed to the Firm by a former associate who resigned from the Firm and continued to represent a contingency fee client originally represented by the Firm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Lisa Brotherton Pumphrey (Pumphrey) suffered serious injuries when an employee of Empire Lath and Plaster rear-ended the car in which she was riding in Billings, Montana. Pumphrey and her husband moved to the state of Virginia shortly after the accident. Pumphrey retained Virginia attorney George Allen (Allen) to represent her in an action against Empire Lath and Plaster to be filed in Yellowstone County. Pumphrey also retained the Firm to represent her. Allen and the Firm agreed to divide equally any attorneys' fees recovered from the case. The Firm assigned Elizabeth Halverson (Halverson), a salaried associate attorney, to Pumphrey's case.

¶5 Halverson worked on the case at the Firm for six months before resigning. Allen informed Pumphrey that Halverson had resigned from the Firm and that another lawyer at the Firm would represent her. Pumphrey chose instead to remain with Halverson and discharged the Firm. The Firm accordingly filed a notice of substitution of counsel with the District Court. Halverson accepted the representation and reimbursed fully the Firm's

2

costs and expenses in the amount of $4,000 upon transfer of the case.

¶6     The Firm filed a lien pursuant to § 37-61-420, MCA, on any potential attorneys' fees recovered from Pumphrey's case. Halverson filed a motion to extinguish the Firm's lien and requested a show cause hearing. The District Court held a show cause hearing, but did not issue an order.

¶7     Halverson continued to represent Pumphrey and to prepare their case for trial. A jury ultimately awarded her $3,900,000.00 in damages. We affirmed the award on appeal. *Pumphrey v. Empire Lath and Plaster*, 2006 MT 99, 332 Mont. 116, 135 P.3d 797. Pumphrey moved to establish the amount of the Firm's attorneys' fees and the District Court held an evidentiary hearing on March 28, 2005. No witnesses testified. Counsel presented legal arguments and Halverson submitted an affidavit regarding her time and activity spent on the case while she still was employed at the Firm. Halverson estimated that she spent 15 to 20 hours working on Pumphrey's case before resigning from the Firm. She further estimated that the Firm's staff spent 10 hours on the case. Halverson's affidavit proposed an hourly attorney rate of $150 and an hourly staff rate of $75. The Firm objected to an award of fees based strictly on the hours worked by Halverson while still employed at the Firm, but did not contest Halverson's proposed hourly rates in the event that the District Court decided to use hourly rates in its calculation of fees.

¶8     The District Court relied upon our decision in *Campbell v. Bozeman Investors of Duluth*, 1998 MT 204, 290 Mont. 374, 964 P.2d 41, in determining that *quantum meruit* provided the proper measure of recovery. The District Court relied upon the estimations

3

in Halverson's affidavit in calculating the amount of hours worked. In turn, the District Court calculated *quantum meruit* by multiplying the number of hours that Halverson testified to having worked on the case while employed at the Firm, by Halverson's proposed hourly rates. The court accordingly awarded the Firm $3,750. The Firm appeals.

## STANDARD OF REVIEW

¶9    We review a district court's determination of attorneys' fees for an abuse of discretion. *Campbell*, ¶ 34. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. *Campbell*, ¶ 34.–

## DISCUSSION

¶10    The Firm argues that *quantum meruit* serves as an inequitable method of apportioning attorneys' fees when an ex-employee continues to represent a client originally represented by his or her former firm. The Firm asserts that *quantum meruit* fails to account for subjective factors such as the Firm's worth and its ability to attract clients, provide representation, and resolve favorably contingent fee cases. The Firm finally contends that the division of attorneys' fees based on *quantum meruit* relies solely on the ex-employee's testimony regarding time spent on the case while still employed at the firm. The Firm contends that this practice proves unreliable and self-serving. The Firm instead proposes that it should receive an equitable percentage of the total attorneys' fees based on a theory that accounts for factors such as the Firm's skill, experience, and its ability to attract clients.

4

¶11 Halverson counters that *quantum meruit* and the calculation employed by the District Court provides the proper method for determining attorneys' fees based upon our decision in *Campbell*. She further argues that the percentage-based fee demanded by the Firm violates Rule 1.5(e) of the Montana Rules of Professional Conduct.

¶12 In *Campbell*, the plaintiff, Jeannie Rosseland Campbell (Campbell) filed an action for damages arising from a car accident. *Campbell*, ¶ 1. Campbell hired attorneys Hartelius and Morgan to represent her under a contingent fee contract, but later grew dissatisfied with their service and discharged them. *Campbell*, ¶ 14. Hartelius and Morgan filed a notice of lien claiming entitlement to the proceeds to a portion of Campbell's claim for payment of their costs and attorneys' fees. *Campbell*, ¶ 15. Campbell, having employed new counsel, settled her personal injury claim for an undisclosed amount. *Campbell*, ¶ 16. Campbell reimbursed Hartelius and Morgan for the full amount of their costs and expenses, but did not pay them any attorneys' fees. *Campbell*, ¶ 17.

¶13 The district court held an evidentiary hearing to determine the amount of attorneys' fees, if any, that Campbell owed Hartelius and Morgan. *Campbell*, ¶ 17. Hartelius testified that he spent approximately 100 hours on the case, that his paralegal spent approximately 50 hours on the case, and that Morgan spent an additional 22 hours on the case. *Campbell*, ¶ 32. The parties stipulated that the attorney fees for Hartelius and Morgan would be $110 per hour. *Campbell*, ¶ 32.

¶14 We determined that when a client discharges an attorney, whether with or without cause, that attorney is entitled to fees from the former client under a *quantum meruit*

theory of recovery for the reasonable value of his or her services rendered at the time of discharge. *Campbell*, ¶ 30. We held that the district court did not abuse its discretion in determining, based upon Hartleius's testimony, that Hartelius and Morgan were entitled to $6,600 and $2,200, respectively. *Campbell*, ¶ 36.

¶15 Here the District Court applied *Campbell* and determined that *quantum meruit* entitled the Firm to $3,750. The District Court adopted Halverson's affidavit statements that she worked approximately 20 hours on Pumphrey's case during her tenure with the Firm, and that the Firm's support staff worked an additional 10 hours. The District Court further adopted Halverson's proposed hourly rates of $150 for her services and $75 for the Firm's staff.

¶16 We agree with the District Court that *quantum meruit* provides the proper measure of fees owed to the Firm. We affirm our holding in *Campbell* on this point. We disagree, however, with the District Court's method of calculation. The District Court's calculations represent an abuse of discretion and result in substantial injustice to the Firm by failing to recognize the Firm's importance in attracting clients. *See Campbell*, ¶ 34. The method employed in *Campbell* of awarding fees based on an hourly rate does not address the factual scenario we have before us—a contingent fee case where a client chooses to have the attorney continue to represent him or her despite the attorney's choice to leave the firm. The calculation applied in *Phil Watson, P.C. v. Peterson* (Iowa 2002), 650 N.W.2d 562, does account, however, for both the significant role the original firm's status played in attracting the client initially, and the fact that a client makes the choice to retain her initial attorney when the attorney leaves the original firm.

6

¶17    In *Watson*, as here, an associate attorney left his firm, taking several clients with him.  *Watson*, 650 N.W.2d at 563.  The court determined that *quantum meruit* provided the proper measure of recovery for the original firm in light of a client's right to terminate his or her attorney, and the right of the firm to receive compensation for work completed by the attorney before the firm's termination.  *Watson*, 650 N.W.2d at 567-68.  The court then addressed the proper method of calculating the division of contingency fees awarded after the associate's departure.  The court awarded the firm a percentage of the fees based upon the time spent by the associate attorney during his tenure at the firm compared to the time spent on the case after leaving the firm.  *Watson*, 650 N.W.2d at 568.

¶18    We adopt the *Watson* methodology to resolve fee disputes in contingency fee cases where an attorney dissociates from a firm and continues to represent clients originally represented by that firm. *Quantum meruit* recovery for any contingency fees awarded after the attorney leaves the firm represents the original firm's entitlement.  A court shall award to the original firm a fee based upon the percentage of total time that the original firm spent on the case while the departing attorney worked at the firm compared to the time the departing attorney spent on the case after dissociating from the firm.  This method of calculating *quantum meruit* more accurately compensates the terminated firm for the reasonable value of services rendered.  To award a firm a percentage rather than a strict hourly rate acknowledges the importance of the original firm's role in attracting the clients.

¶19    We do not share the Firm's concerns regarding reliance on the sworn testimony of departing attorneys to determine the proper amount of attorneys' fees.  We do share the

7

Firm's concerns, however, with the sole reliance on the departing attorney's affidavit when the other party objects. Indeed, in such a situation, a district court cannot calculate an award of attorneys' fees based solely on attorney affidavits. *Rossi v. Pawiroredjo*, 2004 MT 39, ¶ 29, 320 Mont. 63, ¶ 29, 85 P.3d 776, ¶ 29. A district court must base its calculation of an award of attorneys' fees on sworn testimony and any exhibits admitted into evidence at an evidentiary hearing. *Rossi*, ¶ 29. Moreover, a district court possesses discretion in fixing the proper amount of attorneys' fees. *Campbell*, ¶¶ 34-35. These safeguards serve to ensure that district courts award an equitable amount of attorneys' fees.

¶20 Halverson argued in response to the Firm's Rule 59 motion in the District Court to alter or amend the judgment that the percentage-based fee split proposed by the Firm violates Rule 1.5(e) of the Montana Rules of Professional Conduct. Whether Halverson's response brief provided the District Court the appropriate opportunity to consider this argument is not entirely clear from the record. We conclude, however, that Rule 1.5(e) does not apply in the present situation.

¶21 Rule 1.5(e) provides the three conditions under which lawyers who are not in the same firm may make a division of fees. Montana revised Rule 1.5(e) to conform to the American Bar Association's (ABA) Model Rule 1.5(e) in February of 2004. Montana Rules of Professional Conduct (2004). Comment eight to ABA Model Rule 1.5 states that Rule 1.5(e) "does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." Moreover, the ABA established Rule 1.5(e) to prohibit the brokering of legal services, to protect clients

8

from clandestine payment and employment, and to prevent aggrandizement of attorney fees. *Tomar, Deliger, et. al. v. Snyder* (Del. Super. 1990), 601 A.2d 1056, 1058-59. The rule thus has no application in this case where no concerns exist regarding the evils that the ABA designed Rule 1.5(e) to prevent. *Tomar*, 601 A.2d at 1057. Our holding therefore does not run afoul of Rule 1.5(e) of the Montana Rules of Professional Conduct.

## CONCLUSION

¶22 Halverson presented only an affidavit to the District Court regarding the amount of time she spent on Pumphrey's case after dissociating from the Firm. We therefore reverse and remand for an evidentiary hearing. The District Court must allow Halverson and the Firm to present evidence regarding the amount of time Halverson spent on the Pumpreys' case while still employed at the Firm, compared to the amount of time she spent on the case after dissociating from the Firm. As evidenced by the proceedings in the District Court, Halverson may be the only person able to testify to these amounts. After determining these amounts, the District Court shall recalculate the Firm's award of attorneys' fees consistent with this Opinion.

/S/ BRIAN MORRIS

9

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER


Justice Jim Rice concurring in part and dissenting in part.

¶23 I concur with the Court's decision to reverse the District Court and remand. However, I disagree with the standards the Court has provided for determination of the Firm's *quantum meruit* recovery upon remand.

¶24 I agree with the Court's statements in ¶ 16 that the District Court's approach resulted in a "substantial injustice to the Firm by *failing to recognize the Firm's importance in attracting clients*" (emphasis added) and that the *quantum meruit* theory of recovery must account for "the significant role the original firm's status played *in attracting the client initially*." (Emphasis added.) For these reasons the Court reverses the District Court's use of a strict hourly rate to compensate the Firm, and I agree with that holding. However, the Court nonetheless limits the Firm's *quantum meruit* recovery to "a fee based upon the percentage of total time that the original firm spent on the case." *See* ¶ 18.

¶25 As we have previously recognized, contingency agreements are unique, requiring unique consideration, *see Bell & Marra, PLLC v. Sullivan*, 2000 MT 206, ¶ 33, 300 Mont. 530, ¶ 33, 6 P.3d 965, ¶ 33, and thus, I agree with the Court that the contingency fee agreement here requires an assessment of the original firm's contributions to the case beyond a simple application of an hourly rate. However, I would not limit the original firm's fee in this matter to a percentage of the total time spent on the case. Such a bright

line approach may be appropriate when a client unilaterally discharges the original firm and retains another. In those cases, the value in "attracting the client initially," which is the original firm's goodwill with the client, has essentially been lost because the client, dissatisfied with the original firm's services, has withdrawn the business and taken it to another firm. However, the situation is very different when lawyers within one firm disassociate, and a departing lawyer takes the case with her. In that instance, the original firm has not lost goodwill because of client dissatisfaction; rather, the goodwill of the client, and the value which accrues as a result thereof, has been possessed by the departing lawyer. Fairly compensating both the original firm and the departing lawyer thus becomes a more complex issue.

¶26 Of course, *quantum meruit* means "as much as he deserves," and requires that the reasonable value of services be compensated. As discussed above and correctly noted by the Court, an initial consideration of value in this case is obtaining the case in the first place. The Firm asserts that the Firm's rating and experience were reasons that Mr. Allen, Virginia counsel for the Pumphreys, chose to retain the Firm. Further, the Firm asserts that the case was strategically directed by consultations with Mr. Edwards, and that the Firm brought to the case various experts with whom it had developed working relationships "over many years and in many cases."

¶27 Factors such as these give value but are not measured by a simple calculation of the time spent on the case. They should also be considered in determining the original firm's *quantum meruit* recovery. Further guidance can be found in the factors we have previously noted in determining attorney fees. *See Swenson v. Janke*, 274 Mont. 354,

11

361, 908 P.2d 678, 682-83 (1995).  Thus, I dissent from the Court's narrow application of the *quantum meruit* theory in this case.


/S/ JIM RICE


Justice John Warner and Justice James C. Nelson join the concurring and dissenting opinion of Justice Rice.


/S/ JOHN WARNER
/S/ JAMES C. NELSON