JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 The law firm of Edwards, Frickle, Anner-Hughes, Cook & Culver (Firm) appeals from an order of the Thirteenth Judicial District, Yellowstone County, granting the Firm $3,750 in attorneys’ fees. We reverse and remand.
¶2 The Firm’s appeal presents the following issue:
¶3 Whether the District Court properly determined the amount of attorneys’ fees owed to the Firm by a former associate who resigned from the Firm and continued to represent a contingency fee client originally represented by the Firm.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Lisa Brotherton Pumphrey (Pumphrey) suffered serious injuries when an employee of Empire Lath and Plaster rear-ended the car in which she was riding in Billings, Montana. Pumphrey and her *104 husband moved to the state of Virginia shortly after the accident. Pumphrey retained Virginia attorney George Allen (Allen) to represent her in an action against Empire Lath and Plaster to be filed in Yellowstone County. Pumphrey also retained the Firm to represent her. Allen and the Firm agreed to divide equally any attorneys’ fees recovered from the case. The Firm assigned Elizabeth Halverson (Halverson), a salaried associate attorney, to Pumphrey’s case.
¶5 Halverson worked on the case at the Firm for six months before resigning. Allen informed Pumphrey that Halverson had resigned from the Firm and that another lawyer at the Firm would represent her. Pumphrey chose instead to remain with Halverson and discharged the Firm. The Firm accordingly filed a notice of substitution of counsel with the District Court. Halverson accepted the representation and reimbursed fully the Firm’s costs and expenses in the amount of $4,000 upon transfer of the case.
¶6 The Firm filed a lien pursuant to § 37-61-420, MCA, on any potential attorneys’ fees recovered from Pumphrey’s case. Halverson filed a motion to extinguish the Firm’s lien and requested a show cause hearing. The District Court held a show cause hearing, but did not issue an order.
¶7 Halverson continued to represent Pumphrey and to prepare their case for trial. Ajury ultimately awarded her $3,900,000.00 in damages. We affirmed the award on appeal. Pumphrey v. Empire Lath and Plaster, 2006 MT 99, 332 Mont. 116, 135 P.3d 797. Pumphrey moved to establish the amount of the Firm’s attorneys’ fees and the District Court held an evidentiary hearing on March 28, 2005. No witnesses testified. Counsel presented legal arguments and Halverson submitted an affidavit regarding her time and activity spent on the case while she still was employed at the Firm. Halverson estimated that she spent 15 to 20 hours working on Pumphrey’s case before resigning from the Firm. She further estimated that the Firm’s staff spent 10 hours on the case. Halverson’s affidavit proposed an hourly attorney rate of $150 and an hourly staff rate of $75. The Firm objected to an award of fees based strictly on the hours worked by Halverson while still employed at the Firm, but did not contest Halverson’s proposed hourly rates in the event that the District Court decided to use hourly rates in its calculation of fees.
¶8 The District Court relied upon our decision in Campbell v. Bozeman Investors of Duluth, 1998 MT 204, 290 Mont. 374, 964 P.2d 41, in determining that quantum meruit provided the proper measure of recovery. The District Court relied upon the estimations in Halverson’s affidavit in calculating the amount of hours worked. In *105 turn, the District Court calculated quantum meruit by multiplying the number of hours that Halverson testified to having worked on the case while employed at the Firm, by Halverson’s proposed hourly rates. The court accordingly awarded the Firm $3,750. The Firm appeals.
STANDARD OF REVIEW
¶9 We review a district court’s determination of attorneys’ fees for an abuse of discretion. Campbell, ¶ 34. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. Campbell, ¶ 34.
DISCUSSION
¶10 The Firm argues that quantum meruit serves as an inequitable method of apportioning attorneys’ fees when an ex-employee continues to represent a client originally represented by his or her former firm. The Firm asserts that quantum meruit fails to account for subjective factors such as the Firm’s worth and its ability to attract clients, provide representation, and resolve favorably contingent fee cases. The Firm finally contends that the division of attorneys’ fees based on quantum meruit relies solely on the ex-employee’s testimony regarding time spent on the case while still employed at the firm. The Firm contends that this practice proves unreliable and self-serving. The Firm instead proposes that it should receive an equitable percentage of the total attorneys’ fees based on a theory that accounts for factors such as the Firm’s skill, experience, and its ability to attract clients.
¶11 Halverson counters that quantum meruit and the calculation employed by the District Court provides the proper method for determining attorneys’ fees based upon our decision in Campbell. She further argues that the percentage-based fee demanded by the Firm violates Rule 1.5(e) of the Montana Rules of Professional Conduct.
¶12 In Campbell, the plaintiff, Jeannie Rosseland Campbell (Campbell) filed an action for damages arising from a car accident. Campbell, ¶ 1. Campbell hired attorneys Hartelius and Morgan to represent her under a contingent fee contract, but later grew dissatisfied with their service and discharged them. Campbell, ¶ 14. Hartelius and Morgan filed a notice of lien claiming entitlement to the proceeds to a portion of Campbell’s claim for payment of their costs and attorneys’ fees. Campbell, ¶ 15. Campbell, having employed new counsel, settled her personal injury claim for an undisclosed amount. Campbell, ¶ 16. Campbell reimbursed Hartelius and Morgan for the *106 full amount of their costs and expenses, but did not pay them any attorneys’ fees. Campbell, ¶ 17.
¶13 The district court held an evidentiary hearing to determine the amount of attorneys’ fees, if any, that Campbell owed Hartelius and Morgan. Campbell, ¶ 17. Hartelius testified that he spent approximately 100 hours on the case, that his paralegal spent approximately 50 hours on the case, and that Morgan spent an additional 22 hours on the case. Campbell, ¶ 32. The parties stipulated that the attorney fees for Hartelius and Morgan would be $110 per hour. Campbell, ¶ 32.
¶14 We determined that when a client discharges an attorney, whether with or without cause, that attorney is entitled to fees from the former client under a quantum meruit theory of recovery for the reasonable value of his or her services rendered at the time of discharge. Campbell, ¶ 30. We held that the district court did not abuse its discretion in determining, based upon Hartleius’s testimony, that Hartelius and Morgan were entitled to $6,600 and $2,200, respectively. Campbell, ¶ 36.
¶15 Here the District Court applied Campbell and determined that quantum meruit entitled the Firm to $3,750. The District Court adopted Halverson’s affidavit statements that she worked approximately 20 hours on Pumphrey’s case during her tenure with the Firm, and that the Firm’s support staff worked an additional 10 hours. The District Court further adopted Halverson’s proposed hourly rates of $150 for her services and $75 for the Firm’s staff.
¶16 We agree with the District Court that quantum meruit provides the proper measure of fees owed to the Firm. We affirm our holding in Campbell on this point. We disagree, however, with the District Court’s method of calculation. The District Court’s calculations represent an abuse of discretion and result in substantial injustice to the Firm by failing to recognize the Firm’s importance in attracting clients. See Campbell, ¶ 34. The method employed in Campbell of awarding fees based on an hourly rate does not address the factual scenario we have before us — a contingent fee case where a client chooses to have the attorney continue to represent him or her despite the attorney’s choice to leave the firm. The calculation applied in Phil Watson, P.C. v. Peterson (Iowa 2002), 650 N.W.2d 562, does account, however, for both the significant role the original firm’s status played in attracting the client initially, and the fact that a client makes the choice to retain her initial attorney when the attorney leaves the original firm.
*107 ¶17 In Watson, as here, an associate attorney left his firm, taking several clients with him. Watson, 650 N.W.2d at 563. The court determined that quantum meruit provided the proper measure of recovery for the original firm in light of a client’s right to terminate his or her attorney, and the right of the firm to receive compensation for work completed by the attorney before the firm’s termination. Watson, 650 N.W.2d at 567-68. The court then addressed the proper method of calculating the division of contingency fees awarded after the associate’s departure. The court awarded the firm a percentage of the fees based upon the time spent by the associate attorney during his tenure at the firm compared to the time spent on the case after leaving the firm. Watson, 650 N.W.2d at 568.
¶18 We adopt the Watson methodology to resolve fee disputes in contingency fee cases where an attorney dissociates from a firm and continues to represent clients originally represented by that firm. Quantum meruit recovery for any contingency fees awarded after the attorney leaves the firm represents the original firm’s entitlement. A court shall award to the original firm a fee based upon the percentage of total time that the original firm spent on the case while the departing attorney worked at the firm compared to the time the departing attorney spent on the case after dissociating from the firm. This method of calculating quantum meruit more accurately compensates the terminated firm for the reasonable value of services rendered. To award a firm a percentage rather than a strict hourly rate acknowledges the importance of the original firm’s role in attracting the clients.
¶19 We do not share the Firm’s concerns regarding reliance on the sworn testimony of departing attorneys to determine the proper amount of attorneys’ fees. We do share the Firm’s concerns, however, with the sole reliance on the departing attorney’s affidavit when the other party objects. Indeed, in such a situation, a district court cannot calculate an award of attorneys’ fees based solely on attorney affidavits. Rossi v. Pawiroredjo, 2004 MT 39, ¶ 29, 320 Mont. 63, ¶ 29, 85 P.3d 776, ¶ 29. A district court must base its calculation of an award of attorneys’ fees on sworn testimony and any exhibits admitted into evidence at an evidentiary hearing. Rossi, ¶ 29. Moreover, a district court possesses discretion in fixing the proper amount of attorneys’ fees. Campbell, ¶¶ 34-35. These safeguards serve to ensure that district courts award an equitable amount of attorneys’ fees.
¶20 Halverson argued in response to the Firm’s Rule 59 motion in the District Court to alter or amend the judgment that the percentage-based fee split proposed by the Firm violates Rule 1.5(e) of the *108 Montana Rules of Professional Conduct. Whether Halverson’s response brief provided the District Court the appropriate opportunity to consider this argument is not entirely clear from the record. We conclude, however, that Rule 1.5(e) does not apply in the present situation.
¶21 Rule 1.5(e) provides the three conditions under which lawyers who are not in the same firm may make a division of fees. Montana revised Rule 1.5(e) to conform to the American Bar Association’s (ABA) Model Rule 1.5(e) in February of 2004. Montana Rules of Professional Conduct (2004). Comment eight to ABA Model Rule 1.5 states that Rule 1.5(e) “does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm.” Moreover, the ABA established Rule 1.5(e) to prohibit the brokering of legal services, to protect clients from clandestine payment and employment, and to prevent aggrandizement of attorney fees. Tomar, Deliger, et. al. v. Snyder (Del. Super. 1990), 601 A.2d 1056, 1058-59. The rule thus has no application in this case where no concerns exist regarding the evils that the ABA designed Rule 1.5(e) to prevent. Tomar, 601 A.2d at 1057. Our holding therefore does not run afoul of Ride 1.5(e) of the Montana Rules of Professional Conduct.
CONCLUSION
¶22 Halverson presented only an affidavit to the District Court regarding the amount of time she spent on Pumphrey’s case after dissociating from the Firm. We therefore reverse and remand for an evidentiary hearing. The District Court must allow Halverson and the Firm to present evidence regarding the amount of time Halverson spent on the Pumpreys’ case while still employed at the Firm, compared to the amount of time she spent on the case after dissociating from the Firm. As evidenced by the proceedings in the District Court, Halverson may be the only person able to testify to these amounts. After determining these amounts, the District Court shall recalculate the Firm’s award of attorneys’ fees consistent with this Opinion.
CHIEF JUSTICE GRAY, JUSTICES LEAPHART and COTTER concur.